(C.D. 4247)

RALPH A. LEAVITT *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 10, 1971)

*Allerton deC. Tompkins* for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RAO, WATSON and MALETZ, Judges

RAO, Chief Judge: The issue in this case concerns the classification of certain packaging materials used in connection with the importation of duty-free tea from Canada.[1]

The merchandise under protest consists of tea, which was imported together with certain other items such as packaging materials consisting of aluminum foil, labels, tea card ends, tea bags, heat seal paper, boxes, liners, and cellophane, plus inserts and stickers consisting of picture cards and "cups" of fortune.

---

[1] It appears from the official papers that the entries were liquidated within 60 days after appraisement. Since no appeal for reappraisement has been filed and the time therefor has exired, the liquidations remain valid. *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209 (1971).

The tea is the brand known as "Red Rose Tea" imported by Brooke Bond Foods, Inc. from its related Canadian company, Brooke Bond Canada Limited. The plaintiff herein is the customhouse broker for Brooke Bond Foods, Inc., the actual importer.

The tea itself was classified under item 160.50 of the Tariff Schedules of the United States as "Tea, crude or prepared . . . Free." It appears that, by reason of Headnote 2, Subpart A, Part 11 of Schedule 1 of the Tariff Schedules of the United States, the bags (so-called tea bags), liners, cards, tags, strips, boxes and wrappers imported with the tea were classified by the district director under various provisions of said tariff schedules as noted below.

(1)  Aluminum foil, labels, and tea card ends: Dutiable at 15% ad valorem, under item 657.40 of the tariff schedules as "Articles of aluminum."

(2)  Tea bags and heat seal paper: Dutiable at 14% ad valorem, under item 256.90 of the tariff schedules as "Articles, of paper, n.s.p.f.: Other."

(3)  Boxes, liners, and cellophane: Dutiable at 11% ad valorem, under item 256.54, TSUS, as "Boxes of paper: Other."

(4)  Picture cards: Dutiable at 9¢ per pound under item 274.60, TSUS, as "Lithographs on paper: Not over 0.020 in thickness."

(5)  "Cups" of Fortune: Dutiable at 3% ad valorem, under item 274.85, TSUS, as "Printed matter, n.s.p.f.: Other: Susceptible of authorship."

Plaintiff in its protest claims that the merchandise is entitled to entry free of duty under item 160.50 of the tariff schedules, as "entireties with duty-free tea"; or, alternatively, free of duty under "Section 402, Tariff Act of 1930, as containers or coverings of duty-free articles."

At the trial, plaintiff's counsel abandoned its claims insofar as they related to the picture cards classified under item 274.60, TSUS, and the "Cups" of Fortune classified under item 274.85, TSUS, conceding "that these are properly classified" (R. 4) ; and as to the cardboard boxes classified under item 256.54, TSUS, conceding "that these boxes were properly assessed because if they are not immediate containers, they are intermediate containers, and, as such, are covered by the headnote." (R. 6.)

As to items other than those conceded to be properly classifiable, plaintiff claims as follows:

(1)  That the small filter paper strainer bags (paper for the bags), together with their tags and mylar strips as found in exhibits 1 through 6 are properly classifiable under section 402 of the tariff act, as "they are a part of the value of the tea."

(2)  As to wax paper liners (as represented by exhibit 9 which surround the tea bags in exhibits 1 through 5), plaintiff maintains

that if the court overrules its claims and holds that the tea bags are dutiable because they are "immediate containers or wrappings," then these liners are intermediate wrappings, and, as such, are not covered by said headnote 2 but are dutiable with the tea under section 402; similarly if the court sustains plaintiff's claim that the tea bags do not fall within headnote 2, then these wax paper wrappings would be the immediate wrappings and thus correctly classified.

(3) As to outer cellophane wrapper (represented by exhibit 8) surrounding exhibits 1 through 5, plaintiff claims that these cellophane wrappers are "intermediate" wrappers, and not separately classifiable under Headnote 2.

(4) As to the outer wrapper or label on exhibit 7 (the package of loose tea), plaintiff claims it to be an "intermediate" wrapper and like the "cellophane" wrapper, dutiable with the tea.

The relevant statutes are as follows:

Schedule 1, Part 11

Subpart A headnotes:

\* \* \* \* \* \* \*

2. All immediate containers and wrappings, and all intermediate containers, of tea (item 160.50) in packages of less than 5 pounds, net, each are dutiable at the rates applicable to such containers and wrappings if imported empty.

\* \* \* \* \* \* \*

160.50    Tea, crude or prepared_____       Free

Schedule 2, Part 4

Boxes of paper, of paperboard \* \* \*:

\* \* \* \* \* \* \*

256.54    Other _____    11% ad val.

\* \* \* \* \* \* \*

Articles, \* \* \* of paper, \* \* \* not specially provided for:

\* \* \* \* \* \* \*

256.90    Other _____    14% ad val.

Schedule 6, Part 3

657.40    Articles of aluminum \* \* \*_____    15% ad val.

It is also claimed that, in view of section 402, Tariff Act of 1930 [which delineates the various bases of valuation], the articles are free of duty as containers or coverings of duty-free merchandise.

The record consists of the testimony of one witness on behalf of the plaintiff and a number of exhibits. The pertinent exhibits in the case are as follows:

Plaintiff's exhibits 1, 2, 3, and 4: Cardboard boxes, concededly dutiable as paper boxes under item 256.54 of the tariff schedules

(R. 6), having an outer covering of cellophane (exhibit 8, R. 23), and an inner liner of wax paper (exhibit 9, R. 25), containing respectively 64, 100, 48, and 16 identical tea bags (R. 17–21).

Plaintiff's exhibit 5 consists of a cardboard box, containing 100 tea bags, identified as a "restaurant pack" (R. 21–22).

Plaintiff's exhibit 6: A cardboard box, having no cellophane outer cover or wax paper inner liner, containing 3 sample tea bags (R. 21, 32).

Plaintiff's exhibit 7 consists of a half-pound package of "loose tea" contained in "an aluminum foil wrapper to which is glued inside a wax paper liner" (R. 33).

Plaintiff's exhibit 8 is a cellophane or polypropylene film outer covering removed from one of the exhibits (exhibit 5–A) (R. 23).

Plaintiff's exhibit 9 consists of a wax paper liner.

Plaintiff's exhibit 10 consists of a chart illustrating the three things (not the tea) comprising the tea bags as found in exhibits 1 through 6. It contains paper cut-to-size for one tea bag, a tag, and a mylar strip to join the tag to the bag, the articles being indicated in stages of assembly.

Plaintiff in the case maintains that the articles under consideration do not fall within the (separate classification) meaning of headnote 2, *supra*, and specifically contends that the disputed items are properly classifiable free of duty as "entireties" with the duty-free tea. Defendant, on the other hand, contends that all the imported articles, except the tea *per se*, are dutiable at the rates applicable to such articles as if imported empty.

Plaintiff called as its witness Mr. Andrew Leslie Porter, "vice-president of operations" for the exporting company who was responsible for the production of the imported merchandise. He testified that his company prepares and packs the Red Rose Tea for shipment to the importing corporation, and described the tea bags as "small porous strainers containing a measured amount of tea." The witness stated that "in a sense" the wax paper liner which surrounds the tea bag is used for wrapping purposes (R. 25). The tea bag is "firmly heat sealed so that the tea is held inside it" (R. 28), each bag containing 38.9 grains avoirdupois of tea, the quantity required "to make one good cup of tea" (R. 34). The witness further testified that, in his opinion, the tea bags "hold" tea but they do not contain tea as a container; that in the case of the loose tea (exhibit 7), the aluminum foil with the wax paper inside "would be the wrapper" (R. 38), as is the outer cellophane wrapper surrounding the tea bags. The purpose of the "containers" or cardboard box is to protect and transport the tea and for display purposes.

On cross-examination, plaintiff's witness testified that in order to merchandise the tea in a tea bag "you would require the paper which

holds * * * the tea" (R. 43). The "paper" which holds the tea consists of paper, a mylar strip and a tag, which "are one complete article consisting of a tea bag for the purpose of holding tea." The witness further stated that the tea bags are contained in a cardboard box which has contained therein a paper liner which is wrapped around the tea bags that are contained in the box, which in turn, are enclosed with the cellophane covering (exhibit 8). He described exhibit 7 as consisting of a half pound of loose packed tea which is completely enwrapped in a wax paper liner similar to that in exhibits 1 through 4. The liner is then affixed to the aluminum foil "before it is made into this package" (exhibit 7) by thin lines of glue, so that, in actuality, the liner and foil "become one item" (R. 48). Exhibit 7 also contains end cards inside the aluminum foil to help form the shape of the package.

On redirect examination, plaintiff's witness stated that the paper bags, the strip, and the tag "is an entire unit," a unit with the tea.

Reference is made to the claim in plaintiff's protest that the involved items, exclusive of the tea, "should be classified * * * free of duty * * * under Section 402, Tariff Act of 1930, as containers or coverings of duty-free articles." Usual containers and coverings, unless otherwise specially provided for, are not dutiable apart from their contents. Unusual containers, "designed for use otherwise than in the bona fide transportation" of the imported merchandise contained therein, and containers designed for or capable of reuse, are dutiable at the rate or rates to which they would be subject if separately imported. *C. H. Powell Co., Inc.* v. *United States*, 28 CCPA 310, C.A.D. 160 (1941); General Headnotes and Rules of Interpretation to the Tariff Schedules of the United States, 6(b). In the instant case, the general rule as to usual containers and coverings can have no application insofar as immediate containers and wrappings and intermediate containers of tea are concerned, because of the special provision in headnote 2, part 11A of schedule 1, *supra.*

The only claim advanced by the plaintiff in its protest, other than its claim under section 402, *supra,* is for classification "free of duty under Item 160.50 as entireties with duty-free tea." In our opinion, the doctrine of entireties is not applicable to the items in controversy. Headnote 2, *supra,* expressly provides for the separation for dutiable purposes of "all immediate containers and wrappings, and all intermediate containers, of tea (item 160.50)" from the tea *per se.* Their classification as individual entities, when so disassociated, as "if imported empty" is clearly prescribed by the headnote. Samples are potent witnesses (*Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958)). An examination of the samples (exhibits 1 through 7) clearly shows that when separated from the tea *per se,* they consist exclusively of containers and/or wrappers, immediate and/or intermediate.

It is well settled that the master rule to be used in the construction of tariff statutes is to ascertain the legislative intent. *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623 (1956) ; *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, T.D. 46078 (1932), and cases cited therein. In view of the Congressional mandate that all immediate containers and wrappings, and all intermediate containers of tea be treated as "if imported empty," that is, as separate and distinct individual entities for customs purposes, it is evident, in our opinion, that it was the statutorily expressed intention of Congress that the principle of "entireties" not be applied to the involved containers and/or wrappers. This appears evident in the words, terms, or expressions employed by Congress in the language used in headnote 2, *supra*. Plaintiff's claim invoking the doctrine of entireties is without merit.

It is a basic and well settled principle in customs litigation that the protesting importer must carry the twofold burden of proving (1) that the classification of the classifying officer was erroneous, and (2) to establish affirmatively that its own contention is correct. *Bob Stone Cordage Co., et al.* v. *United States*, 51 CCPA 60, C.A.D. 838 (1964). Further, the classifying officer is presumed to have found every fact to exist that was necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75 (1939).

Headnote 2, *supra*, provides for classification separately, as "if imported empty," for "all immediate containers and wrappings, and all intermediate containers of tea (item 160.50)" TSUS. Accordingly, the district director, in classifying the involved merchandise separately, as "if imported empty," presumptively found, factually that said packaging materials were either immediate containers and wrappings or intermediate containers of tea. In our opinion, not only has the plaintiff failed to sustain its twofold burden of proof, but also the record in this case including the samples which are potent witnesses (*United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932)) supports the presumptively correct classification of the merchandise.

The record discloses that the imported tea was packed in tea bags (the immediate containers), which in turn were packed in cardboard boxes (retail packages) of less than five pounds (the intermediate containers). The cardboard boxes were enclosed and imported in outside cartons, which were entered free as outer coverings, not here in issue. The "immediate" containers of the imported merchandise consist of the tea bags, the heat seal paper, and the tea tags attached to each bag, the latter of which are constituent and component parts of the tea bags. The "intermediate" containers consist of the cardboard boxes (which were concededly properly classified), together with their cellophane outer wrappings and their wax paper inner linings, both

of which are integral, constituent, and component parts of the cardboard boxes. Exhibit 7 (loose tea) is encased in aluminum foil to which is glued a wax paper liner. Both of the latter elements comprise the immediate container of the tea.

The tea bag and its constituent elements, as above noted, together with the tea contained therein, is an entirety. The cardboard box and its constituent elements is also an entirety. However, by virtue of the Congressional mandate in headnote 2, *supra*, the tea bags as immediate containers of tea, and the cardboard boxes as intermediate containers of tea, are separately dutiable as "if imported empty." The specific provision of headnote 2, *supra*, is applicable exclusively to item 160.50 (tea) of the tariff schedules, and by its specific language covers "all" containers or wrappings of tea, regardless of their physical composition.

In support of the classification made by the district director, defendant in its brief directs our attention to certain legislation and cases previously decided which have a bearing upon the applicability of headnote 2, *supra*, to the imported merchandise, as noted below.

In *United States* v. *Brown & Co.*, 9 Ct. Cust. Appls. 45, T.D. 37903 (1919), the merchandise consisted of bamboo baskets containing tin packages of tea weighing less than five pounds. The court therein interpreted the proviso to paragraph 627, the tea provision of the Tariff Act of 1913: "That the cans, boxes, or other containers of tea packed in packages of less than five pounds each shall be dutiable at the rate chargeable thereon if imported empty." The importers maintained that the baskets were the "usual" containers of tea, and that as the tea was free under the relevant paragraph, the baskets as such usual containers were also free of duty. The court in the above case held that the bamboo baskets (the intermediate containers) were dutiable under the specific provision (bamboo, paragraph 175, Tariff Act of 1913). *Inter alia*, it was stated that it was not necessary to decide whether or not said intermediate containers were "usual containers" of tea since, in any event, they would be subject to duty, since they were "containers of tin packages of tea which weigh less than five pounds," and, accordingly, all such containers, whether usual or unusual were dutiable.

In *United States* v. *Brown & Co.*, 10 Ct. Cust. Appls. 89, T.D. 38358 (1920), the importation also consisted of teas entitled to free entry under paragraph 627, *supra*. The court therein again interpreted the proviso in said paragraph 627: "That the cans, boxes, or other containers of tea packed in packages of less than five pounds each shall be dutiable at the rate chargeable thereon if imported empty." As imported, the tea was contained in tin cans, the quantity in each being less than five pounds. The court held that the "immediate" containers of the tea, the tin cans, were not subject to duty, but that duty should be

imposed upon the "intermediate" containers, namely, the baskets as "unusual" containers under the specific provision (bamboo) "if imported empty."

In the *Brown* cases, *supra*, the court held that the proviso in paragraph 627, *supra*, embraced only the "intermediate" containers of the packages of tea, and that the dutiability of the immediate containers depends on whether or not they were "usual containers." Subsequent legislation (paragraph 1682, Tariff Act of 1922; paragraph 1783, Tariff Act of 1930, and headnote 2, TSUS, *supra*) rendered legally ineffective the *Brown* decisions, and, accordingly, made irrelevant the issue of "usual" or "unusual" containers, by statutorily providing for and invoking the dutiability of all immediate and intermediate containers of tea at the rate or rates applicable or chargeable "if imported empty." The statutes above referred to, as well as headnote 2 support, in our opinion, a finding as to the correctness of the district director's classification in the case at bar.

For all of the reasons stated aforesaid, the protest against the classification of all of the involved items, as specifically set forth, *supra*, is overruled.

Judgment will issue accordingly.